232

**In re SEABURY et al.**

**Patent Appeals No. 4220.**

Court of Customs and Patent Appeals.

Dec. 26, 1939.

John G. Sbarbaro, of Washington, D. C. (Craig V. Morton, of Dayton, Ohio, of counsel), for appellants.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellants have here appealed from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner refusing to allow in a reissue application claims numbered 16 to 33, inclusive. The fifteen claims of the patent (assigned to Delco-Remy Corporation) which were presented in the reissue application were allowed. The rejection of both tribunals was chiefly on the ground that the reissue application was not filed within a reasonable time after appellants learned that they could not have the appealed claims in a divisional application. No references were cited.

Claims 25 to 33, inclusive, were further rejected by the examiner on the ground that they failed to meet the requirements of section 4888, R.S., 35 U.S.C.A. § 33, in that "they are alternative, broad and indefinite."

The Board of Appeals did not agree with the examiner in holding that claims 25 to 33 were too broad but affirmed his rejection of these claims for the reason that they were "vague and indefinite."

The invention of the appealed claims relates to a process of mixing resins with graphite in making brushes for electrical machines. In view of our conclusion, it is not important to further discuss the invention or to set out illustrative claims.

The facts upon which the examiner and the board based the rejection first above referred to, relating to unreasonable delay in filing the application for reissue, are as follows:

On May 31, 1930, appellants filed two applications for patents. One ripened into a patent, 1,884,298, issued October 25, 1932 (the patent here sought to be reissued). The second application contained the disallowed claims on appeal here. As to the character of claims in the two applications the appellants state: "The two applications although having very similar disclosures had claims which were directed to what were considered to be two separate subjects of invention, the claims of the abandoned application being drawn to cover a method of mixing of certain granular or shredded materials while the claims of the companion application which became patent No. 1,884,298 covered the method of forming a brush for an electric machine, such as a generator, for instance. The claims directed to the method of forming the brush included some of the steps of the broad method of mixing materials defined in the companion application and in addition, other steps relating specifically to the forming of the brush."

The appealed claims were in the application filed on May 31, 1930, which did not ripen into a patent. They were finally rejected upon the ground of double patenting on August 22, 1933. Said application then became abandoned on February 22, 1934. Nothing further was done by appellants until the filing of the pending reissue application on October 24, 1934, which is one day less than two years from the time of the issuance of the patent, fourteen months after appellants were finally notified that they might not have the appealed claims in the divisional application, and eight months after the abandonment of the application.

It should be observed that the Patent Office has made no rejection of the claims upon the ground that there was a lack of showing of inadvertence in failing to include the appealed claims in the application which ripened into said patent, but the rejection which we are to consider involves the sole question as to whether or not mere unexplained delay or laches in filing an application for reissue of a patent, if the application is filed within two years from the time the patent issues is sufficient grounds for rejection. There is no suggestion in the instant case that there were any intervening rights which accrued during said period of nearly two years. No excuse or explanation whatever is offered by appellants for the delay in filing the application.

Appellants argue at great length that under the doctrine of Topliff v. Topliff et al., 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, and other cases hereinafter discussed, it is entirely proper for them to delay in applying for a reissue of their patent for nearly two years, as long as there are no intervening rights, and that it is not necessary under the stated circumstances to offer any excuse whatever for not more promptly applying for reissue. It seems to be conceded by appellants that intervening rights would ordinarily justify a rejection, and the Solicitor for the Patent Office does not contend that under the circumstances of this case appellants might not have shown such excuse for the delay as would warrant the allowance of the claims.

So, the sole question necessary for our decision in the instant appeal (disregarding the question of inadvertence) is: May an applicant who has erroneously divided his claims for an invention into two applications secure the allowance of his claims

by a reissue of a patent which resulted from one of the applications, the reissue being applied for any time within two years from the date of the patent and after fourteen months from the time he was informed by the Patent Office that he might not have the claims in a divisional application (in which ruling he acquiesced), in event there are no intervening rights disclosed and in a case where no excuse whatever is offered for the delay?

The pertinent provisions of section 4916, R.S., relating to the reissue of defective patents read as follows: "Sec. 4916 [35 U.S.C. § 64, 35 U.S.C.A. § 64]. Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. * * *"

In Miller v. Brass Company, 104 U.S. 350, 352, 26 L.Ed. 783, in an opinion by Mr. Justice Bradley, a reissued patent was held invalid because there was lack of promptness in applying for the reissue. Reissue of the patent there under consideration was applied for fifteen years after the patent issued. The court held that the patentee could have discovered that his claims were not sufficiently broad by a reading of the patent at the time it was issued, and that he should have applied for the reissue "immediately." In discussing the matter the court said: " * * * But it must be remembered that the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or if his, he dedicates it to the public. This legal effect of the patent cannot be revoked unless the patentee surrenders it and proves that the specification was framed by real inadvertence, accident or mistake, without any fraudulent or deceptive intention on his

part; *and this should be done with all due diligence and speed.* Any unnecessary laches or delay in a matter thus apparent on the record, affects the right to alter or reissue the patent for such cause. If two years' public enjoyment of an invention with the consent and allowance of the inventor, is evidence of abandonment, and a bar to an application for a patent, a public disclaimer in the patent itself should be construed equally favorable to the public. Nothing but a clear mistake or inadvertence, *and a speedy application for its correction,* is admissible when it is sought merely to enlarge the claim. [Italics ours.]"

Again, in the same opinion it was said: "Now whilst, as before stated, we do not deny that a claim may be enlarged in a re-issued patent, we are of opinion that this can only be done when an actual mistake has occurred; not from a mere error of judgment, for that may be rectified by appeal, but a real *bona fide* mistake, inadvertently committed; such as a court of chancery, in cases within its ordinary jurisdiction, would correct. Re-issues for the enlargement of claims should be the exception and not the rule. And when, if a claim is too narrow, that is, if it does not contain all that the patentee is entitled to, the defect is apparent on the face of the patent, and can be discovered as soon as that document is taken out of its envelope and opened, *there can be no valid excuse for delay in asking to have it corrected.* Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more comprehensive claim. The granting of a re-issue for such a purpose, after *an unreasonable delay,* is clearly an abuse of the power to grant re-issues, and may justly be declared illegal and void. * * * [Italics ours.]"

Following Miller v. Brass Company, supra, the Supreme Court in Topliff v. Topliff et al., supra, had before it the question of the validity of a reissued patent, which reissue had been granted upon an application filed within four months after the date of the original patent and where a second application for reissue had been filed in a little more than a month after the first reissue was granted. The court held that the patent was valid and stated [145 U.S. 156, 12 S.Ct. 829, 36 L.Ed. 658]:

" * * * Whether this be an enlargement of the original claim or not, it is for substantially the same invention, and, in view of the fact that the reissue was applied for as soon as the mistake was discovered, and before any rights in favor of third parties could be reasonably expected to have attached, or had in fact attached, we think this reissue is not open to the objections which have proved fatal to so many since the case of Miller v. Brass Company, 104 U.S. 350 [26 L.Ed. 783], was decided.

"It is a mistake to suppose that that case was intended to settle the principle that, under no circumstances, would a reissue containing a broader claim than the original be supported. We have no desire to modify in any respect the views expressed in that and subsequent cases with regard to the validity of reissues. * * *"

In the Topliff case it was further pointed out that in the case of Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665, it was held that the Commissioner of Patents had the right to determine the question of inadvertence, accident or mistake but that the question of a reasonable time within which to seek a remedy for the mistake was one which the court could determine and was one of law. In the Topliff case, after discussing many different cases involving the question of the validity of a reissued patent the following was said:

"From this summary of the authorities it may be regarded as the settled rule of this court that the power to reissue may be exercised when the patent is inoperative by reason of the fact that the specification as originally drawn was defective or insufficient, or the claims were narrower than the actual invention of the patentee, provided the error has arisen from inadvertence or mistake, and the patentee is guilty of no fraud or deception; but that such reissues are subject to the following qualifications:

"First. That it shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original.

"Second. That due diligence must be exercised in discovering the mistake in the original patent, *and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always, be treated as evidence of an abandonment of the new matter to the public to the same extent that a failure by the inventor to apply for a patent within two*

*years from the public use or sale of his invention is regarded by the statute as conclusive evidence of an abandonment of the patent to the public.* [Italics ours.]

"Third. That this court will not review the decision of the commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record; but that the question whether the application was made within a reasonable time is, in most, if not in all, such cases, a question of law for the court."

In the decisions from which the above quotations are taken, as well as in the many others referred to by the Supreme Court in the last two above-cited cases, frequent reference is made to the necessity for "diligence" in seeking to correct the error. Promptness is required and it is stated that there could be no valid excuse for delay in asking to have the error corrected; that there must be a speedy application for the correction. We do not understand that by the statement it was meant that there could be no valid excuse for delay in making application for the correction of the mistake, providing such excuse satisfactorily explained the cause of delay. In effect, the holdings are that if it were an excusable delay it would not be an unreasonable one. In other words, the Supreme Court has held repeatedly that the question of what is a reasonable time within which to file an application (the statute being silent on the question) is a question of law for the court and that where broadened claims are sought in a reissue there must be diligence and speed in applying for the correction or satisfactory explanation for delay.

The examiner in the instant case in passing upon the question of the right of appellants to have the appealed claims in the reissue application stated: " * * * The record discloses that the instant application (reissue application of Patent No. 1,884,298) was filed on October 24, 1934, one day before the expiration of the two year period after the date of the issuance of the original patent (October 25, 1932), which date is more than fourteen months after the final rejection of the application wherein the claims first originated and more than eight months after the abandonment of said application. In view of said circumstances, in the Examiner's opinion, applicants are guilty of laches. In other words, there was an unreasonable delay and neglect on the part of applicants in

filing their reissue application after they discovered that the claims in their patent were unduly limited (which was at least as early as the date of the final rejection in application Serial No. 458,591). Furthermore, applicants offer no excuse for said delay in their petition for a reissue, nor have they attempted to show why said delay is not unreasonable, and not a neglect on their part, other than to state that they applied for the reissue within the period of two years as authorized by the decision in *the* Topliff v. Topliff, 145 U.S. 156 [12 S. Ct. 825, 36 L.Ed. 658]. The Examiner does not believe and does not understand that it was the intention of the Supreme Court to indicate in the Topliff v. Topliff decision that an application for a reissue with broadened claims is in time under all circumstances if filed at any time within two years from the date of the original patent in absence of a specific showing of the intervention of private rights. * * * " He then cited and quoted from Roos Co. v. McMillan, 6 Cir., 64 F.2d 568, certiorari denied, 290 U.S. 684, 54 S.Ct. 121, 78 L.Ed. 589.

The Board of Appeals entered into no extended discussion of the question of laches, but agreed with the examiner in his conclusion that appellants' said delay was fatal to the right of reissue. In answer to appellants' reliance upon the decision of the Board of Appeals in the case of Ex parte Byck & Peakes, 1935 C.D. 28, the board said: "In the decision Ex parte Byck and Peakes, referred to by appellants, the Board of Appeals allowed a patent on a reissue application filed within two years but containing broadened claims, because there was no evidence to show that the delay was unreasonable. In the present case, however, the evidence appears to indicate that appellants had decided, at least as early as the date on which they permitted the other application to become abandoned, that if they were to obtain protection on the matter covered by the appealed claims, they would present claims covering that matter in a reissue application."

We are in agreement with the conclusion reached by the Patent Office tribunals that the Supreme Court in Topliff v. Topliff et al., supra, never intended to make the period of two years a definite limitation within which an applicant would have an absolute right to the allowance, in a reissued patent, of claims broader than those of the original patent.

It seems to us that the Supreme Court decisions, in applying the reissue statute, from which decisions the above quotations are made, rest primarily upon the conclusion that diligence and promptness alone in the respects indicated could prevent the reissue statute being used in committing unjustifiable hardships and wrongs upon others. The sole issue of this case is determined when we answer the inquiry: Did appellants act with diligence and promptness when they waited fourteen months without excuse or explanation after being told that the allowance of the claims in a divisional application would be double patenting and that they might not have them in such application? We think that if there existed a reasonable excuse for the delay, it should have been shown. In the absence of such a showing, such delay was fatal to appellants' right to the reissue.

At one place in appellants' brief they make some contention to the effect that a reasonable excuse for the delay should have been found by the Patent Office tribunals. It is not contended that any affidavits or other proof were submitted, but it is argued that there was a well-known financial depression existing in the country at the critical period here involved. It is not even contended in argument that the depression rendered appellants unable on account of financial difficulties to earlier have applied for a reissue, and we find nothing in the record to suggest an acceptable excuse for the said delay.

In the case of Roos Co. v. McMillan, supra, cited by the examiner, the Circuit Court of Appeals for the Sixth Circuit held invalid a reissued patent, application for the reissue being made some eighteen months after the patent originally issued. After discussing the authorities at some length, the court stated [64 F.2d 570]: "No fixed rule can be laid down as to what constitutes an unreasonable delay. It has been said that, where the reissue is for the purpose of enlarging claims, the only mistake suggested being that they are not broad enough, the application should be made within 'a reasonably short period after the original patent was granted.' What is a reasonably short period or a reasonable time depends to some extent, at least, upon the curative purposes of the application. We do not understand from the authorities nor from the discussions in Chapman v. Wintroath, 252 U.S. 126, 40

S.Ct. 234, 64 L.Ed. 491, and Webster Electric Co. v. Splitdorf Electric Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792, that an application for a reissue with broadened claims is in time if filed at any time within two years from the date of the original patent in the absence of a specific showing of the intervention of private rights. It is true that by analogy to the law of public use a longer delay requires that excuse therefor should be made manifest by special circumstances. Topliff v. Topliff, supra. This putting of the burden on the patentee to show that the delay was not unreasonable is not to be taken, we think, as meaning that there can be no unreasonable delay or laches within that period. No decision of the Supreme Court to which we have been referred so adjudicates. In the cases in which validity has been denied, the question has not been free from intervening private rights, and necessarily so, because it is only when some private right is involved that the reissue is questioned in the courts. It has been stated too often, however, to admit of doubt that the patentee is bound to discover the error within a reasonable time and apply for reissue or lose his right. These statements are made without reference to circumscribed periods. In the case of a broadened reissue, there is involved, it seems to us, not only the right of the public, that is, the right to use that which is originally disclosed and not claimed and which the public presumably does use, but also the right of the patentee to broaden his claims, a right that may be lost by unreasonable delay depending upon the applicable circumstances and without reference to fixed periods. In this view of the patentee's rights, we are content to hold, until the Supreme Court has held otherwise, that a reissue patent may be held to be invalid because of unreasonable delay in filing the application therefor, notwithstanding the absence of a showing of intervening private rights and even though the application were filed within two years from the date of the original issue."

We have examined the cases (including Chapman v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491, Webster Electric Co. v. Splitdorf Electric Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792, and Crown Cork & Seal Co. v. Ferdinand Gutmann Co., Inc., 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265) cited in appellants' brief and find nothing in such cases which detracts from the force of the decisions upon which we have relied. Some of the cases cited

by appellants relate to divisional applications in which there is some analogy drawn between divisional applications and reissue applications. However, we are of the opinion, for reasons stated, that the weight of controlling authority is to the effect that even within the period of two years from the issuance of a patent, an applicant may not .have a reissue of the same upon the ground of inadvertence, accident or mistake, where there is an unexplained delay of fourteen months, and even though no intervening rights appear.

The decision of the Board of Appeals is affirmed.

Affirmed.