

Lee J. Gary, James M. Parker, and Gary, Desmond & Parker, Chicago, Ill. (Frank P. Cyr, Washington, D. C., of counsel), for appellant.

Charles M. Thomas and M. M. Weisman, Washington, D. C. (C. J. Giuliani, Des Plaines, Ill., of counsel), for appellee.

Before WORLEY, Acting Chief Judge, and RICH and MARTIN, Judges.

WORLEY, Acting Chief Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the single count of Interference No. 87,311 to the senior party, Louis Schmerling, appellee here.

46 CCPA

**Henry BLUESTONE, Appellant,**

v.

**Louis SCHMERLING, Appellee.**

**Patent Appeal No. 6402.**

United States Court of Customs and Patent Appeals.

March 16, 1959.

Rehearing Denied May 15, 1959.

Appellant, Bluestone, filed his application December 22, 1952. Schmerling's application No. 419,627, directly included in the interference, was filed March 29, 1954, but he was given the benefit of his copending application No. 100,756, filed June 22, 1949, and was thus made the senior party. Bluestone, in his preliminary statement, alleged no date of invention as early as the filing date of the earlier application of Schmerling, and was accordingly ordered to show cause why judgment should not be entered against him. In response, Bluestone contended that neither Schmerling application contained a sufficient disclosure to support the subject matter of the count, nor a sufficient showing of utility of the compound produced by the process of the count. Each of those questions had been seasonably raised by Bluestone and de-

cided adversely to him by the Primary Examiner.

The board agreed with the examiner and held that each of the Schmerling applications was sufficient to disclose both the claimed method and utility of the resulting compound. While the correctness of each of those holdings is challenged here, it is clear the later application contains everything pertinent to the invention in issue which is found in the earlier one, as well as some additional matter, and it does not appear to be denied by Bluestone that, if the earlier application contains a sufficient disclosure, the later one also does. In view of that fact, and of the further fact that Schmerling took no testimony and relies for priority solely on his earlier application, the disclosure of the later application need not be further considered. If the earlier application contains a sufficient disclosure to support the count, the decision of the board must be affirmed; otherwise it must be reversed. No question has been raised as to the sufficiency of the Bluestone application, hence the disclosure of that application need not be specifically considered.

The count reads:

"The method which comprises reacting vinyl chloride with hexachlorocyclopentadiene in a Diels-Alder manner to form their equimolar adduct."

It will be seen that the count comprises three essential features; namely, (1) the use of the specified materials as ingredients, (2) reaction of the ingredients in a specified manner and, (3) the production of an equi-molar adduct, i. e. one in which the ingredients are present in amounts proportional to their molecular weights.

The earlier Schmerling application discloses the condensation reaction of hexachlorocyclopentadiene with any one of a wide variety of chloro-substituted olefins, and states that "The preferred chloroolefin utilizable in the present condensation reaction on the basis of yield of product obtained therefrom and the relative ease of preparation is vinyl chloride." We interpret that language as an unmistakable disclosure of the use of the materials recited by the count as reaction ingredients.

The only limitation in the count as to the nature of the reaction is that it takes place "in a Diels-Alder manner." As to that manner, the "Concise Chemical and Technical Dictionary" (1947) Edited by H. Bennett and published by Chemical Publishing, Inc., Brooklyn, N. Y., contains the following definition:

"Diels-Alder synthesis (diene synthesis). Reaction between a compound containing a conjugated double bond and a compound containing an activated double bond, e. g. butadiene and maleic anhydride."

As indicated by the definition, the distinguishing feature of the Diels-Alder synthesis does not reside in specific condition of reaction, but in the choice of the ingredients. Accordingly, we find the following statement in the board's decision to be correct:

"The Diels-Alder concept was in the choice of certain type reactants for addition by conventional means. If the correct type reactants are chosen—the ensuing action is inherently a Diels-Alder reaction."

That vinyl chloride and hexachlorocyclopentadiene are reactants of the proper type is evident from the fact that the count calls for them as taking part in a Diels-Alder reaction, and from the further fact that vinyl chloride contains an activated double bond and hexachlorocyclopentadiene a conjugated double bond. It follows that the condensation reaction of those materials, which is disclosed by Schmerling's earlier application, would inherently be "in the Diels-Alder manner."

With respect to the final requirement of the count, i. e., that the product of the reaction shall be the equi-molar adduct of the ingredients, it is noted that the application states that operable yields may be obtained by the use of an approximately equimolecular ratio of the re-

actants, but that it is preferred to use a stoichiometric excess of the chloro-olefin component (vinyl chloride) which excess may be from 1.5 to 1 to about 10 to 1, for the reason, inter alia, that the hexachlorocyclopentadiene component will thus be consumed substantially to completion, while the excess of the chloro-olefin which remains after the reaction may be readily removed by distillation. It seems evident that if an excess of the chloro-olefin as low as 1.5 to 1 results in complete reaction of the pentadiene ingredient with a substantial residue of the chloro-olefin, a substantially equi-molar adduct will result. Moreover, it was stated by the board that

> "Examples of the Diels-Alder reaction shown in organic chemistry texts typically show that there results an equi-molar adduct and accordingly such is assumed unless there is indication otherwise."

We do not find where appellant questioned that statement or called for identification of the texts referred to, nor is the statement challenged in his reasons of appeal. Accordingly we accept it as correct, and agree with the board that an equi-molar adduct is inherent in the process disclosed by the earlier Schmerling application.

While Schmerling's earlier application does not give a specific example of the use of vinyl chloride in a reaction, it does give an example of the reaction of hexachlorocyclopentadiene with 1, 3-dichloropropene, and states that such example is "indicative of typical representative compounds of the present process." We agree with both Patent Office tribunals that that is a sufficient disclosure to enable one skilled in the art to carry out a similar reaction involving vinyl chloride.

Appellant asserts that merely bringing the specified reactants together by condensation does not inherently or inevitably cause them to react in a Diels-Alder manner. In support of that proposition he states the record shows that some of the olefins mentioned by Schmerling may react in a different manner with hexachlorocyclopentadiene and that in some cases care must be taken to avoid polymerization. However, there is nothing to show that such difficulties are encountered in reacting the specific materials recited by the count, or that any particular precautions are necessary to avoid them. On the contrary, appellant's application, after giving an example using those materials, states that "The specific process shown in the foregoing example may be varied with respect to conditions utilized," and suggests a number of possible variations. Nothing is said as to the possibility of polymerization, or of obtaining a product other than the desired adduct.

As above indicated, we are of the opinion the disclosure of the earlier Schmerling application teaches that an equi-molar adduct is to be obtained, and we find nothing to justify a conclusion differing from that of the tribunals below, i. e., that the manner of obtaining such a product by reacting the ingredients involved here would be apparent to a person skilled in the art on the basis of the application disclosure.

Appellant further contends that the insufficiency of the Schmerling disclosure to support the count is *res judicata* in view of the examiner's final rejection of claims 1 and 2 of the earlier application as being unduly broad on the ground that "Only a single compound of the claimed genus is actually described in the specification, namely, that characterized in the passage beginning on the last line of page 11," and that Schmerling did not appeal from that rejection, but cancelled the rejected claims. As we interpret the evidence of record, the compound the examiner stated to be the only one actually described is not the adduct of the instant count.

■ It is questionable whether the issue of *res judicata* is properly before this court since it was not specifically raised by any reason of appeal. However, if anything became *res judicata* by reason of the failure to appeal from the final rejection, it was merely the holding that claims 1 and 2 were too broad. By failing to appeal from a final rejection an

applicant does not necesarily admit the validity of every ground of rejection.

Moreover, the count, unlike rejected claims 1 and 2, is not drawn to a compound but to a method, hence would not necessarily require that the product of the method be "actually described in the application." Accordingly, Schmerling's failure to appeal claims 1 and 2 does not render the rejection of those claims *res judicata* on the issue whether the disclosure of his earlier application will support the method claim at issue.

Appellant also questions the sufficiency of the disclosure in said application as to utility of the adduct which constitutes the product of the claimed method. We agree with the Patent Office tribunals that such disclosure is ample. The application states that the products of the process disclosed are useful as insecticides. As indicated in Smith v. Bousquet, 111 F.2d 157, 27 CCPA 1136, such a broad disclosure may not be sufficient in the absence of more specific information as to manner of use, but Schmerling's application furnishes such additional information. Thus, it is explained in the application that the compounds act by contact with the insect; that they may be dissolved in solvents such as a mineral or vegetable oil; that a composition containing from 1 to 5 percent of the active component is normally effective; and that such compositions may be sprayed on the area to be treated. That would appear to be clearly enough information to enable a person skilled in the art to use the compounds effectively.

Appellant by his arguments and by his reliance on Smith v. Bousquet, which decision was concerned primarily with actual, rather than constructive, reduction to practice, appears to contend that it was incumbent on Schmerling to prove that the compounds will function as stated in his application. We do not understand that to be the law. In the absence of any apparent reason why the compounds disclosed will not so function, or of any evidence showing that they actually do not, the statements in the application are generally deemed sufficient. In re Chilowsky, 229 F.2d 457, 43 CCPA 775.

We have given careful consideration to the various arguments advanced by appellant but find nothing which would justify us in reaching a conclusion differing from that of the board.

The decision is affirmed.

Affirmed.